## Abner Maupin *v.* Fortune Daniel.

### October Term, 1876.

Partnership account.—Burden of proof. — Under a bill for the settlement. of a partnership, and a reference to the master to take the account, made by consent, without adjudication by the court, the burden of proof is on the complainant, and if he cannot furnish sufficient evidence to enable the: master to state a partnership account, his suit necessarily fails.

*John Lawrence*, for complainant.
*And. McClain*, for defendant.

THE CHANCELLOR : — Bill filed December 10, 1869. It alleges that, in the latter part of 1862, complainant and defendant entered into partnership in the keeping of a boarding-house, in the city of Nashville, complainant putting into the business $25 cash, and $60 previously loaned by him to defendant; that while the boarding-house was conducted by them, complainant handed defendant $90 to carry on the business, and furnished soap, coffee, sugar, and meat, to the value, in all, of $181.80; that in order to carry on the business more advantageously, complainant and defendant bought a wagon and three horses for $106.05, all of which was paid by complainant, except $8 by defendant; that defendant was the owner of the lot on which the boarding-house was kept, worth $1,500, and by verbal sale sold one-half the house and lot to complainant, who was to pay for it by work and improvement on the place; that complainant furnished $232 worth of lumber, and built a house on the lot at a cost of $410; that the defendant managed the business, "and run the boarding-house in times when their income was large," and that he realized "probably" two or three thousand dollars, and applied the money to his own use; that he has never made a settlement with complainant, nor paid him any thing for his work and labor, and has refused to make him any title to one-half of the lot. The prayer of this bill is, "that an account be taken of the partnership transactions, and that he have his decree against defendant for all amounts found to be due him."

The defendant having neglected to put in any defence to this bill, the complainant took the bill for confessed, and afterwards, on October 23, 1874, a final decree, reciting the facts as detailed in the bill, and taking a money decree for the one-half of the money alleged to have been advanced to the partnership business, the whole of the amount expended on the lot, and $1,000 of alleged profits in running the boarding-house, with interest, making in all $2,437.64. The decree further ordered the lot mentioned, which had

been attached in the cause, to be sold in satisfaction of the decree and costs.

On January 29, 1875, the execution of this decree was superseded, upon the defendant's petition to have the same set aside, and to be allowed to defend. On July 9, 1875, the cause came on for hearing upon the defendant's motion to dismiss the petition, when, according to the decree entered "by consent of parties, by their solicitors," it was ordered that the petition be dismissed with costs, and that the decree of October 23, 1874, "be so far modified and changed as to set aside the recovery and order of sale, and refer the cause to the clerk and master for an account; and he will accordingly state an account, and report to the next term of this court."

Upon this reference, the depositions of the complainant and defendant were taken, and, no other testimony being tendered, the master reports that the evidence is not sufficient to enable him "to state a partnership or other account between the parties by items." He adds: "The existence of a partnership is not proven, and the testimony fails to show that there is any thing due the complainant from the defendant."

To this report the complainant has filed several exceptions, in substance that the consent decree leaves the *pro confesso* order in full force, and that the partnership as alleged is admitted, as well as the specific advances mentioned in the bill. The original decree upon this *pro confesso* consists, as we have seen, of a mere recital of the facts stated in the bill, and a judgment or "recovery" therein, without any adjudication of principles or rights. The "recovery" being set aside by the agreed decree, there is nothing left except the recitals. The learned counsel for the complainant concedes this by simply contending for the benefits of his *pro confesso*. And I confess I am unable to see any ground upon which this claim can be successfully resisted. Nothing is said in the agreed decree about the

*pro confesso*, and the reference by consent is not of the matters of litigation, but of the " cause," for an account. The " cause " means, of course, the case as made by the record, except as modified and changed by the consent decree. That case is the bill and the *pro confesso* order. The latter is not affected by the agreement, and remains in full force and effect. This is the legal construction of the language used, whatever may have been the actual intent.

In this view, the exception of the complainant to the finding of the master, that the existence of the partnership is not proven, is well taken. But the sustaining of this exception would do the complainant no good, if it be true, as also found by the master, that the evidence is not sufficient to enable him " to state a partnership or other account between the parties." The bill rests entirely upon the partnership, and prays only for a partnership account. Even the lumber, materials, etc., used in putting up improvements, and the work and labor done, are expressly averred to have been furnished and performed " on the premises, in furtherance of the partnership." The burden of proof is on the complainant, and if he cannot furnish evidence sufficient to enable the master to state a partnership account, his suit necessarily fails; for the mere fact of making advances gives him no right of action against his copartner. The liability of the copartner depends entirely upon the result of a general partnership account.

The agreed reference is of that vague and indefinite character, too frequent in consent decrees, which settles nothing, and leaves the master without any directions. The cause is referred to him " for an account," and " he will accordingly state an account." Neither in this decree nor in the original decree is there any declaration of the rights of the parties, or of the principles on which the account should be stated. He has nothing to look to except the bill, and that only prays for a partnership account. That partnership was in carrying on a boarding-house.

The alleged sale of half the lot on which the boarding-house was situated is stated to have been by parol, and that the defendant refused to execute it. The contract was therefore void, the defendant so electing. The outlay of the complainant in part payment was, consequently, consideration advanced for partnership purposes. The account to be taken is a partnership account.

In order to take a partnership account, there must first be a general account, ascertaining the profit or loss, as the case may be, and then separate accounts between each of the partners and the firm, showing how the profit or loss is to be shared. *Hicks* v. *Chadwell*, 1 Tenn. Ch. 251. The individual account is impossible until the general account has been taken; for, until we know whether there has been a profit or loss, we cannot tell whether there is any thing to divide. The business may have sunk the whole capital put into it, and the individual property of the partners besides. It would be useless to state that the complainant put in $10 at one time, $25 at another, a box of soap here, and a load of lumber there, unless we have *data* for the general partnership account. The complainant is content to show his side of the account in the way of advances; but neither in his bill nor in his deposition does he give us any facts touching the terms of the partnership, the advances of the defendant, the time during which the business was carried on, nor the details of that business. The defendant gives him no help in his deposition, for he denies the partnership altogether. The boarding-house belonged to defendant, and he must have contributed something, both in labor and supplies, if not money. The boarders, from whom two or three thousand dollars were realized, must have been fed on something more than what the defendant supplied, to wit, a sack of coffee, a sack of sugar, a sack of apples, and twelve bushels of meal, — a modicum of bread to an " intolerable deal of sack." I am constrained to concur with the clerk in his conclusion that the evidence is not sufficient to

enable him to state a partnership account.   The exceptions will be overruled, except the first, and the report confirmed. The complainant is entitled to a decree against the defendant for the costs.